## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

GERNARD CHESTNUT,

     Plaintiff,

vs.                          Case No. 4:11cv225-MP/CAS

CAPTAIN KIMBERLY PETERSEN,
and CHARLIE GILMORE,

     Defendants.

_____/

## SECOND REPORT AND RECOMMENDATION[1]

     Defendants Gilmore and Petersen filed a motion for summary judgment. Doc. 64. Defendants contend that there are no material disputed facts and they are entitled to judgment as a matter of law. *Id.* Plaintiff was advised of his burden in opposing summary judgment, doc. 66, and Plaintiff's response, titled as his "Objection to Defendants Motion for Summary Judgement," doc. 67, was filed on August 26, 2013.

_____

     [1] The first report and recommendation, doc. 56, dealt with an earlier motion to dismiss, doc. 48, concerning the failure to exhaust administrative remedies as to five other claims. The recommendation to grant the motion to dismiss was adopted and this case proceeded from that point forward on three surviving claims against Defendants Petersen and Gilmore. Docs. 56, 60.

Plaintiff submitted five exhibits with his opposition, two of which were also submitted by Defendants.

**Allegations of the Sixth Amendment Complaint**

The claims to be adjudicated in this motion to dismiss concern Plaintiff's allegation that on June 9, 2010, Defendant Gilmore assaulted Plaintiff and used excessive and unnecessary force.  Doc. 26 at 6, ¶2.  Thereafter, on June 15, 2010, Plaintiff alleged that Defendant Petersen retaliated against Plaintiff for writing grievances by placing him in maximum confinement for the duration of his incarceration at the jail.  *Id.* at ¶3.  On May 5, 2011, Defendant Petersen retaliated against Plaintiff by ordering officers to deny Plaintiff meals and deprive him of food if he did not get on his knees during mealtimes.  *Id.* at ¶4.

**Standard of Review**

On a motion for summary judgment Defendants initially have the burden to demonstrate an absence of evidence to support the nonmoving party's case.  Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986).  If they do so, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial.  *Id.*  An issue of fact is "material" if it could affect the outcome of the case.  Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).  Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is

insufficient.  The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986).  All reasonable inferences must be resolved in the light most favorable to the nonmoving party, Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999), if there is a genuine dispute as to those facts.  Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007), *cited in* Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  Matsushita Elec. Industrial Co., 475 U.S. at 587 (internal quotation marks omitted), *quoted in* Ricci v. DeStefano, 129 S.Ct. at 2677.

 "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c),(e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

Local Rule 56.1(A) provides that a motion for summary judgment "shall be accompanied by a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried.  Failure to submit such a statement constitutes grounds for denial of the motion."  The Local Rule also provides that the statement "shall reference the appropriate deposition, affidavit, interrogatory, admission, or other source of the relied upon material fact, by page, paragraph, number, or other detail sufficient to permit the court to readily locate and check the source."  The Local Rule provides that the party opposing the motion shall serve a similar statement of material facts as to which the party contends there is a genuine issue to be tried, using the same format.  Facts set forth in Defendants' statement will be deemed admitted (if supported by the record evidence) "unless controverted by the statement required to be filed and served by the opposing party." N.D. Fla. Loc. R. 56.1(A).  Plaintiff did not file a statement of the material facts.

**The relevant, undisputed Rule 56(e) evidence**[2]

Plaintiff was booked into the Leon County Jail on May 30, 2010, and was placed in administrative confinement in H-dorm.  Doc. 64, Ex. 1 (doc. 64-1).[3]  On June 9, 2010, Plaintiff was escorted from the medical department, where he had been on direct observation after tripping and falling after taking a shower, to a cell in G-dorm by

---

[2] While Plaintiff filed opposition, doc. 67, he did not file any affidavits setting forth facts which demonstrate a genuine dispute for trial.  Plaintiff's opposition is, rather, in the nature of a memorandum of law providing argument only as to Defendant's facts.

[3] References to exhibits are to the paper copy and page number, followed by a reference (in parenthesis) to the corresponding document and page in the electronic docket.  Both citations are referenced as Plaintiff is a pro se litigant and does not have access to the court's electronic docket.

Sergeant Mitchell and Defendant Gilmore.  Doc. 64, Ex. 1 (Inmate Event Log, doc. 64-1) and Ex. 2 (Incident Report #100124156, dated June 9, 2010, doc. 64-2).  The Event Log reveals "Pod H was full" so Plaintiff was to be placed in Pod G1, Room #3.  Doc. 64, Ex. 1 (doc. 64-1), Ex. 2 (doc. 64-2).  Once in Pod G, Plaintiff refused to enter the room and "started backing down the wall away from the room."  Doc. 64, Ex. 2.  Defendant Gilmore stepped over to Plaintiff and placed his left hand on Plaintiff's left wrist and his right hand on Plaintiff's shoulder."  *Id.*  Another officer who was in Pod G, Officer Dennis, placed his right hand on Plaintiff's right wrist and his left hand on Plaintiff's right shoulder."  *Id.*  Plaintiff was ordered to enter the room for a second time.  *Id.*  Plaintiff stepped toward to the door, but "placed his hands on the door frame to resist going into the room."  *Id.*  Plaintiff was ordered to stop resisting and step into the room for a third time, and he again "refused to comply."  *Id.*  Officer Dennis and Defendant Gilmore had Plaintiff "take a step back and again ordered him to step into the room."  *Id.*  Plaintiff then "grabbed the door frame with both hands tensing and bracing."  *Id.*  Defendant Gilmore again ordered Plaintiff to stop resisting, and Plaintiff "made a jerking motion" towards Defendant Gilmore "as if he was trying to strike" Defendant Gilmore.  *Id.* Plaintiff was then "placed on the floor to regain control."  *Id.*  While on the floor, Plaintiff "stopped resisting and complied with all orders and he was placed in the room with no further incident."  *Id.*  The Report indicates that within fifteen minutes of that incident, Plaintiff was returned to the medical department and treated by Nurse Stevens.  *Id.*

In his deposition, Plaintiff explained that the incident occurred because he told Defendant Gilmore "that the room was dirty" and he "wanted to clean the cell out

before" entering it. Doc. 64, Ex. 3 (Plaintiff's Deposition, at 22-24, doc. 64-3). Plaintiff

said that he stopped in the doorway and Defendant Gilmore tried to push him from the

back to get him to go into the cell. *Id.* Plaintiff said that his instinct was to brace

himself, which he did, by grabbing the doorjamb. *Id.* Plaintiff said that Defendant

Gilmore then jumped on Plaintiff's back, like "a piggyback," and tried "to wrestle" him to

the ground. *Id.* at 24, 28. Plaintiff said Defendant Gilmore "was too weak" and was not

"strong enough to take" Plaintiff to the floor, but Plaintiff said he laid down on the floor.

*Id.* at 23-24. Plaintiff said: " I went on ahead - - when I seed [sic] him using that

excessive force, I went on ahead and laid myself down to keep this officer [from]

attacking me." *Id.* at 27-28. Plaintiff admitted that Defendant Gilmore did not hit him,

but complained that he "tried to take [him] down . . . using excessive force on" him. *Id.*

at 28. Plaintiff explained that he did not resist in any way and did not fall onto the

ground but went down to the ground by himself and "laid down flat on the ground." *Id.*

at 29. Plaintiff acknowledged that he suffered only "slight injuries" to his knees and

elbows when he "had to go drop down." *Id.* When asked how he was injured if he was

compliant and went down willingly, Plaintiff said it was because Defendant Gilmore "was

still trying to tussle" him or "manhandle" him while on the ground. *Id.* at 30. Plaintiff

said Defendant Wilmore was "laying flat on top of" him on the ground. *Id.* at 30-31.

When Defendant Gilmore eventually realized that Plaintiff was not resisting, Plaintiff

said he got up, and walked inside the cell as previously directed. *Id.* at 31.

Plaintiff also testified in his deposition that several weeks later, Officer Kevin

White told Plaintiff that he and Defendant Petersen had decided that Plaintiff would

remain in confinement for the duration of his incarceration at the Jail. *Id.* at 40, 41.

Officer White did not tell Plaintiff why that decision had been made. *Id.* at 43.

Defendant Petersen states in her affidavit that she "did not make any decision to assign the Plaintiff to confinement for the duration of his incarceration at the Leon County Jail." Doc. 64, Ex. 5 at 2 (doc. 64-5). Defendant Petersen advises that the classification office[4] decides where to house an inmate "based on several criteria, including the inmate's behavior." *Id.* She states that "Plaintiff was housed in either disciplinary confinement or administrative confinement from May 31, 2010 through January 19, 2012 because he was considered a management problem due to his aggressive and disruptive behavior." *Id.*

Plaintiff stated in his deposition that Officer Kevin White told him that he and Defendant Petersen had decided to place Plaintiff in confinement for the duration of his incarceration at the jail. Doc. 64, Ex. 3 at 40 (doc. 64-3). Plaintiff maintained that it was both Officer White and Defendant Petersen's decision. *Id.*

Defendant Petersen also avers that she is not "aware of any written or verbal complaints or grievances submitted by the Plaintiff before June 15, 2010 relating to being housed in confinement." *Id.* Furthermore, Defendant Petersen states "there are no grievances, notes from prisoner or complaints in Plaintiff's inmate file relating to the June 9, 2010 incident involving Officer Gilmore." *Id.* at 1. She avers that she is "not otherwise unaware of any written or verbal complaints or grievances submitted by the

---

[4] See footnote 6 on page 10.

Plaintiff relating to the June 8, 2010[,] incident involving Officer Charles Gilmore." Doc. 64, Ex. 5 at 2.

On May 4, 2011, Officer Kenneth Lane was picking up food trays at the conclusion of the evening meal service. Doc. 64, Ex. 4 (doc. 64-4). When he opened the flap on Plaintiff's cell door to pick up Plaintiff's meal tray, Plaintiff extended his hand and arm through the flap and threw liquid, which had the distinct odor of urine, from a white Styrofoam cup at Officer Lane, hitting him in the face and upper torso.[5] *Id.* As a result of this incident, Defendant Petersen gave instructions for a new procedure when serving Plaintiff his meals. Doc. 64, Ex. 5 at 2; *see also* Ex. 5(b) (doc. 64-5 at 5). The officers "were to instruct the Plaintiff to get on his knees facing the back wall of the cell with his hands in plain view." Doc. 64, Ex. 5 at 2. Once Plaintiff was in that position, the officer should open the cell door and place Plaintiff s meal tray "on his bunk and collect the tray and other trash from the previous meal." *Id.* at 2-3. If Plaintiff refused to comply with that procedure, it would "be considered a refusal of the meal and a daily meal consumption report would be completed indicating his refusal." *Id.* at 3. Defendant Petersen stated that the procedure was implemented solely due to Plaintiff's "violent and aggressive behavior" and not "because of Plaintiff's race or because the Plaintiff filed grievances against myself and other officers." *Id.*

Plaintiff testified in his deposition that he was "to go to be back of [his] cell, turn around, put [his] knees on the ground, . . . cross [his] ankles, and put [his] hands behind

---

[5] Plaintiff denied throwing a cup of liquid on Officer Lane on May 4th in his deposition, and denied "being written up for throwing urine on an Officer Michael Figures" on another occasion. Doc. 64, Ex. C at 57 (doc. 64-3).

the back of [his head . . . ." Doc. 64, Ex. C at 54 (doc. 64-3). Plaintiff said that he told the officers he would not "do it, so they refused to give" him food. *Id.* He further testified that this procedure continued for approximately two weeks and that during that time he refused to comply with the procedure about ten times and was denied food on each of those times. *Id.* at 56-57. Plaintiff said that he was never denied food if he complied with the procedure. *Id.* Plaintiff denied throwing a cup of liquid on Officer Lane. *Id.* He also did not recall "being written up for throwing urine on an Officer Michael Figures" either. *Id.*

The evidence reveals that "[a]fter exhibiting improved behavior," Plaintiff was moved from pod G2, a disciplinary confinement area, to pod G1, the administrative confinement area, on October 14, 2011. Doc. 64, Ex. 5 at ¶6. Plaintiff was moved from pod G1 to H-dorm on November 28, 2011, and moved into General Population on January 19, 2012. *Id.*

Plaintiff testified that nobody ever told him that he was too disruptive to be placed in general population but if he followed the rules and stopped creating disturbances, he could be placed in general population. Doc. 64, Ex. C at 43 (doc. 64-3). Plaintiff acknowledged in his deposition that in approximately January of 2012, he had been returned to general population. *Id.* at 52. While Plaintiff admitted that he "had to be on good behavior for a certain" period of time, he stated in his deposition that jail officials were not trying to release him to general population until his attorney contacted Major Mike Wood. *Id.* at 53.

Plaintiff submitted several grievances with his opposition. The first exhibit is a memorandum concerning a grievance Plaintiff submitted on March 31, 2011. Doc. 67, Ex. C3. Major Mike Wood investigated Plaintiff's grievance that he was retaliated against by Sergeant Gollihue. Plaintiff complained about "having to kneel, cross his ankles and place his hands behind his head with his fingers interlaced anytime he is removed from his cell." *Id.* Major Wood interviewed Defendant Petersen about those allegations, and she stated that the procedures were instituted because Plaintiff had "threatened staff, destroyed county property, flooded his room, barricaded himself in his room and thrown body fluids under the doors of other inmates housed in pod G-2." *Id.* Defendant Petersen acknowledged authorizing the procedures "to protect staff, other inmates, while also preventing property damage." *Id.* Major Wood stated that he reviewed Plaintiff's "event log[6] and found a large amount of documentation that supported Capt. Petersen's decision." *Id.*

Plaintiff's final exhibit appears to be Plaintiff's effort to present a sworn statement. Doc. 67, Ex. B2. Plaintiff's statement fails to contain any language that the statement is true and correct or sworn to under penalty of perjury. It is not sufficient to comply with the requirements of 28 U.S.C. § 1746 (providing alternative to sworn statement but

---

[6] The Inmate Event Log includes a comment entered by "WHITEK" on June 15, 2010, at 11:25 a.m., under the category "Classification Interview" which states: "Due to inmate's previous and current behavior while in this facility and also his charges, he will be housed in close custody (Pod-G or H) for the durration [sic] of his incarceration." Doc. 67, Ex. 1; doc. 64, Ex. 1. The name WHITEK corresponds with Plaintiff's testimony in his deposition that Officer Kevin White and Defendant Petersen decided that Plaintiff should be held in confinement. The exhibit also clarifies that Officer White is from classification, supporting Defendant Petersen's assertion that classification decides where to house inmates.

requiring that statement include an averment, signed and dated, that the statement is true under the penalty of perjury).  The declaration does contain a notary stamp, but such stamp and attesting signature only provides evidence that Plaintiff is the person who signed what amounts to an unsworn declaration on March 25, 2011.  Nevertheless, assuming that if given the opportunity to properly attest to the facts stated therein, the declaration has been considered.

Plaintiff states that for the prior month, Det Petersen had required him to get on his knees and place his hands behind his head and cross his ankles.  Doc. 67, Ex. B2. Plaintiff claimed that the reports that Plaintiff had been pouring a substance under the cell doors was "non-violent and non aggressive" behavior.  *Id.*  Plaintiff claims it amounted to only "harmless and simply petty minor infractions . . . ."  Plaintiff claimed that Defendant Petersen "simply has minor infractions confused with high risk inmate." *Id.*

**Analysis**

**a.     Retaliation**

Both of Plaintiff's claims against Defendant Petersen are for retaliation.  "[P]rison officials may not retaliate against an inmate for exercising a constitutionally protected right.  Since prisoners retain some first amendment rights, a claim that prison officials retaliated for the exercise of a personal first amendment right states a claim." Adams v. James, 784 F.2d 1077, 1082 (11th Cir. 1986), *citing* Bridges v. Russell, 757 F.2d 1155 (11th Cir. 1985); *see also* Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)(reversing the district court's dismissal of Mitchell's First Amendment claim for

retaliation). An inmate has the right to complain about the conditions of his confinement and may not be punished for filing prison grievances. Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003). A retaliation claim requires a prisoner to demonstrate three elements: (1) that his speech or act was constitutionally protected; (2) that the defendant's retaliatory conduct adversely affected the protected speech; and (3) there was a causal relationship between the retaliatory actions and the adverse effect on speech. Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005) (adopting the objective "ordinary firmness" test in proving a retaliation claim and rejecting a subjective test which would require plaintiffs to show "they were actually chilled in the exercise of their First Amendment rights.").

Noteworthy in retaliation claims is the fact that conduct which is not in itself actionable under § 1983 becomes actionable if undertaken with a retaliatory motive. Dixon v. Brown, 38 F.3d 379 (8th Cir. 1994)(finding that "[a]lthough the filing of a false disciplinary charge is not itself actionable under § 1983, the filing of a disciplinary charge becomes actionable if done in retaliation for the inmate's filing of a grievance."). This circuit has also held that alleging facts which in themselves are not constitutionally impermissible but which are done "in retaliation for filing lawsuits and administrative grievances" violates an inmate's First Amendment rights. Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986)(internal citations omitted).

Nevertheless, when a "prisoner violates a legitimate prison regulation," and a "defendant can show that he would have taken the same action" regardless of the inmate's protected First Amendment action, the defendant "is entitled to prevail on [his

motion for judgment as a matter of law or prior to trial on] summary judgment."

Thaddeus-X v. Blatter, 175 F.3d 378, 399 (6th Cir. 1999), *quoted in* Smith v. Mosley,

532 F.3d 1270, 1277-78 (11th Cir. 2008).  Put another way, a "defendant can prevail on

summary judgment if [he] can show it would have taken the same action in the absence

of the protected activity."  Smith v. Florida Dep't of Corr., 713 F.3d 1059, 1063 (11th Cir.

2013).  Because of "the near inevitability of decisions and actions by prison officials to

which prisoners will take exception[,] and the ease with which claims of retaliation may

be fabricated," a prisoner's retaliation claim must be evaluated "with skepticism and

particular care."  Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995)(abrogated on other

grounds by Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009)).  A prisoner-plaintiff "must do more

than make broad factual allegations;" he must "show, by affidavits or as otherwise

provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific

factual issues that can only be resolved at trial."  Colon, 58 F.3d at 872.

In this case, Plaintiff alleged in his complaint that a week after he had been

writing grievances, Defendant Petersen directed on June 15, 2010, that Plaintiff should

be placed in maximum confinement and remain there for the duration of his

incarceration.  On May 5, 2011, Plaintiff alleged that Defendant Petersen issued the

order requiring Plaintiff to get on his knees at mealtime because Plaintiff had been

"writing her up . . . ."  Doc. 26.

According to Plaintiff's complaint, he alleged he grieved the use of force by

Defendant Gilmore and those grievances prompted Defendant Petersen to retaliate

against him.  Doc. 26 at 6.  Defendant Petersen's affidavit presents evidence that she

was unaware of any grievances or complaint "relating to the June 8, 2010[,] incident involving Officer Charles Gilmore." *See* doc. 64-5 at 2. Moreover, the evidence reveals that Officer White decided where to house Plaintiff and not Defendant Petersen. Thus, Plaintiff has not come forward with any evidence to show a causal relationship between Defendant Petersen's actions and his engaging in protected First Amendment activities, nor has Plaintiff shown Defendant Petersen made the housing assignment. Summary judgment should be granted in Defendant Petersen's favor on the first retaliation claim.

As to the second claim for retaliation and use of new procedures on May 5, 2011, Defendant Petersen has shown a legitimate reason for imposing those conditions. Plaintiff has not come forward with evidence to dispute that the use of such procedures was done out of retaliation rather than because of Plaintiff's conduct.[7] Plaintiff had thrown a cup of urine on an officer which justified the use of additional procedures when dealing with Plaintiff. Indeed, Plaintiff's own evidence demonstrates that the procedure had been previously instituted for a period of time because Plaintiff had "threatened staff, destroyed county property, flooded his room, barricaded himself in his room and thrown body fluids under the doors of other inmates housed in pod G-2." *See* doc. 67, Ex. C3. Plaintiff's own evidence reveals that Plaintiff believed his behavior amounted to minor infractions only and should not have been punished so severely. *See* doc. 67,

---

[7] While Plaintiff stated in his deposition that he did not throw urine on Officer Lane, that assertion is insufficient to demonstrate a genuine dispute of material fact. Plaintiff did not provide his own statement of undisputed material fact and did not properly dispute that fact as presented in Defendant's statement. *See* Jones v. Gerwens, 874 F.2d 1534, 1537 n.3 (11th Cir. 1989) (treating a fact as conceded, under a local district court rule, when the party opposing summary judgment failed to object to the fact in the movant's statement of undisputed material facts), *referenced in* Cockrell v. Sparks, 510 F.3d 1307, 1310, n.2 (11th Cir. 2007).

Ex. B2.  That disagreement is immaterial.  Plaintiff acted inappropriately, more than

once, and the additional procedures were a legitimate means to control Plaintiff's

behavior.  Because Plaintiff did not present any evidence of retaliation, summary

judgment should be granted in favor of Defendant Petersen on this claim as well.

**b.      Use of Force**

The right to not have excessive and unnecessary force used against a pretrial

detainee is protected by the Fourteenth Amendment.  Carr v. Tatengelo, 338 F.3d 1259,

1271 (11th Cir. 2003), cited in Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007).

 Under either the Fourteenth Amendment or the Eighth Amendment (which protects

convicted prisoners from excessive force), "whether the use of force violates an

inmate's constitutional rights 'ultimately turns on 'whether force was applied in a good

faith effort to maintain or restore discipline or maliciously and sadistically for the very

purpose of causing harm.' " Cockrell, 510 F.3d at 1311, *quoting* Whitley v. Albers, 475

U.S. 312, 320–21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986) (quoting Johnson v.

Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)) (establishing the standard for an Eighth

Amendment excessive force claim); *see* Bozeman v. Orum, 422 F.3d 1265, 1271 (11th

Cir. 2005) (applying the Whitley test in a Fourteenth Amendment excessive force case).

Pursuant to the Whitley standard, courts must consider "the need for the application of

force, the relationship between the need and the amount of force that was used, [and]

the extent of injury inflicted." Cockrell, 510 F.3d at 1311, *quoting* Whitley, 475 U.S. at

321, 106 S.Ct. at 1085; *see e.g.*, Williams v. Burton, 943 F.2d 1572, 1575 (11th Cir.

1991); Ruble v. King, 911 F.Supp. 1544, 1554 (N.D. Ga. 1995).  In evaluating such a

claim, courts "must balance the 'prisoner's Eighth Amendment rights with the competing institutional concerns for the safety of prison staff and inmates.'" Ruble, 911 F.Supp. at 1554, *quoting* Williams, 943 F.2d at 1575. "The management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force." Johnson, 481 F.2d at 1033. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."

Here, Plaintiff admits that he refused to enter the cell as directed by Defendant Gilmore. Even when Defendant Gilmore and Officer Dennis placed their hands on Plaintiff and ordered him to enter the cell, Plaintiff refused and grabbed the door frame, physically resisting. Defendant Gilmore directed Plaintiff to stop resisting and Plaintiff made a move that appeared to Defendant Gilmore as though Plaintiff was about to strike him. At that point, it cannot be said that it was unnecessary for Defendant Gilmore to use some minimum amount of force to avert an aggressive act by Plaintiff and gain Plaintiff's compliance with a lawful command. The force was used "in a good-faith effort to maintain or restore discipline," and was not done "maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992). Plaintiff was taken to the ground and, whether Plaintiff wilfully dropped to the ground or Defendant Gilmore forcibly took Plaintiff to the ground, the force used was reasonable and not excessive. There is no evidence that Plaintiff suffered more than a slight injury to his knees and elbows. Such *de minimis* injury suggests that the use of physical force was also minimal and not excessive. *See* Vicks

v. Knight, 380 F.App'x 847, 852 (11th Cir. 2010) (finding that because nurses could not identify any bruising or swelling, a jury could reasonably infer that only *de minimis* force was used). Summary judgment should be granted in Defendant Gilmore's favor.

In light of the foregoing, it is respectfully **RECOMMENDED** that the motion for summary judgment, doc. 64, be **GRANTED** and judgment entered in Defendants' favor on all claims.

**IN CHAMBERS** at Tallahassee, Florida, on February 24, 2014.


 S/     Charles A. Stampelos
**CHARLES A. STAMPELOS
UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

No. 4:11cv225-MP/CAS